# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURA WINFREY and JUSTINA WINFREY, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 16 C 9118 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CITIMORTGAGE, INC., FEDERAL NATIONAL MORTGAGE ASSOCIATION, JASON SHAPIRO, RISING REALTY LLC, KAREN YARBROUGH, COOK COUNTY RECORDER OF DEEDS, JOSEPH A. BERRIOS, COOK COUNTY ASSESSOR, HAUSELMAN, RAPPIN & OLSWANG, LTD., AS TRUSTEE FOR CITIMORTGAGE, INC., JOSEPH PRESTON HARRIS, SR., DOES 1–10 inclusive, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Pro Se Plaintiffs Laura Winfrey and Justina Winfrey bring this suit against CitiMortgage, Inc. ("Citi"), Federal National Mortgage Association ("Fannie Mae"), Jason Shapiro, Rising Realty LLC ("Rising Realty"), Cook County Recorder of Deeds Karen Yarbrough, Cook County Assessor Joseph A. Berrios, the law firm Hauselman, Rappin & Olswang, Ltd. ("HR&O"), Joseph Preston Harris, Sr., and Does 1–10. Plaintiffs allege that Defendants engaged in a variety of nefarious actions relating to a mortgage Laura Winfrey took out on her home in Chicago, including the origination of the mortgage, foreclosure, and the subsequent eviction of Plaintiffs from the property. Plaintiffs bring claims for declaratory judgment (Count I), injunctive relief (Count II), accounting (Count III), rescission of the mortgage (Count IV), wrongful foreclosure (Count V), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count VI), action to quiet title (Count VII), and violation of the Thirteen Amendment of the United States Constitution (Count VIII).[1] Citi and Fannie Mae now move to dismiss [22] the complaint arguing that Plaintiffs' claims against them are barred by the *Rooker-Feldman* doctrine, *res judicata*, and additionally, fail to state a claim. HR&O also moves to dismiss [55] the complaint on the same bases. Shapiro and Rising Realty move to dismiss [28] the complaint asserting the *Rooker-Feldman* doctrine, *res judicata*, and failure to state a claim. Because Plaintiffs' claims against Citi, Fannie Mae, Shapiro, Rising Realty, and HR&O (collectively, the "Motion Defendants") in Counts I, II, and IV–VII are in essence attempts to have this Court overturn the prior judgments of Illinois state courts, the *Rooker-Feldman* doctrine bars this Court from exercising jurisdiction over these claims and the Court grants the motions to dismiss these Counts.[2] And because Counts III and VIII do not allege sufficient facts to state a claim against any of the Motion Defendants, the Court grants the motions to dismiss these Counts as well.

## BACKGROUND[3]

The history of the case stretches back to the beginning of this century. Laura Winfrey ("Laura") purchased the house located at 4830 West Quincy Street (the "Quincy Street House") in Chicago, IL in December 2001. To finance the purchase, Laura took out a mortgage from

---

[1] Plaintiffs also bring a claim for ineffective assistance of counsel against Joseph Harris and a claim for a violation of the Freedom of Information Act against Cook County Assessor Joseph Berrios. Neither of these claims is currently before the Court.

[2] Because the Court dismisses the claims that could potentially be barred by *res judicata* pursuant to the *Rooker-Feldman* doctrine, the Court does not address whether *res judicata* would also require their dismissal. *See Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("Where *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including *res judicata*.").

[3] The facts in the background section are taken from Plaintiffs' complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court takes notice of state court documents from the proceedings referenced in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Fieldstone Mortgage. For over eight years, Laura made payments on the mortgage and the arrangement proceeded without incident. But in early 2010, things began to go off the rails.

Sometime in 2010, Laura attempted to get a loan modification on her mortgage, but was denied on her first two attempts. Before her third attempt, she spoke with someone at Citi, who advised her that her prior attempts had failed because her mortgage was current. The Citi employee advised her to allow her mortgage to become delinquent and then apply for the modification. Laura did this and received a trial loan modification on the third attempt on March 30, 2010.[4]

Despite the loan modification, on April 6, 2010, Citi began foreclosure proceedings against the property. On April 28, 2010, Citi filed a foreclosure suit against the Quincy Street House. On April 30, 2010, Laura made a payment to Citi via Western Union, but Citi cancelled the payment. Citi subsequently sent Laura a new loan modification package and cancelled the trial modification. Laura did not respond to the new package she was sent.

In July 2010, the state court entered a default judgment against Laura in the foreclosure action. On September 14, 2010, the state court entered an order granting judgment for foreclosure and sale. Laura finally appeared in the foreclosure action on February 25, 2011. The court entered a second order approving the report of sale and an order of possession on April 20, 2011. And Fannie Mae recorded the judicial sale deed in its favor on May 9, 2011.

On July 27, 2011, Justina Winfrey ("Justina") filed a motion in the foreclosure action to stay execution of the possession order and eviction. The judge struck the motion on March 23, 2012. Taino Winfrey, who is not a party to this case, also filed a similar motion on March 23, 2012, which the judge also struck. On March 16, 2012, a state court judge entered an order for

---

[4] It is not clear from the complaint how or when Citi came into the picture as the servicing company for the mortgage.

3

possession of the Quincy Street House against Justina and all unknown occupants of the house. Justina filed a response to this order asserting violations of ICFA, and the court rejected this objection on October 9, 2014.

On April 22, 2015, Laura filed an action in state court to quiet title and recover possession of the Quincy Street House, in which she was at the time still residing. On May 1, 2015, the judge took notice of the April 20, 2011, order in the foreclosure case and denied Laura's request for a temporary restraining order, and on October 1, 2015, the judge dismissed the case for want of prosecution.

Finally, on September 8, 2016, after over five years of litigation in state court, a Cook County Sheriff's Deputy evicted Plaintiffs from the Quincy Street House. They filed this suit on September 16, 2016.

## ANALYSIS

### A.   *Rooker-Feldman* Doctrine

Citi, Fannie Mae, Shapiro, Rising Realty, and HR&O assert that the *Rooker-Feldman* doctrine deprives the Court of subject matter jurisdiction over this case, and therefore, the Court must dismiss the complaint. The *Rooker-Feldman* doctrine bars federal district courts from asserting jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The *Rooker-Feldman* doctrine works to bar not only issues actually raised and litigated in the state court, but also those that are "inextricably intertwined" with the state court decision. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). Whether a claim is inextricably intertwined turns on

whether "the district court is in essence being called upon to review the state-court decision." *Id.* (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). If the claim is so intertwined, then the district court may not assert jurisdiction over it, unless the plaintiff did not have a reasonable opportunity to raise it in the state court proceedings. *Id.* To establish that they did not have such an opportunity, Plaintiffs must point to "some action taken by the state court or state court procedures in place" that formed a barrier to Plaintiffs presenting the claims in the state court. *Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999)).

Here, on September 14, 2010, the state court entered an order of default against Laura Winfrey in the foreclosure action Citi filed against her in relation to the mortgage recorded against the Quincy Street House. After Laura filed an appearance in that action in February 2011, the state court again entered a judgment of foreclosure and judicial sale in April 2011. Plaintiffs then spent the next five years filing various motions in the original foreclosure action and subsequent civil actions in state court attempting to stop or delay their eviction, but lost in each state court action. After they were finally evicted in September 2016, they brought the present case in federal court seeking to undo the state court orders of foreclosure, sale, and eviction.

### 1. Count I: Declaratory Judgment

Count I seeks a declaratory judgment about whether Citi is the true holder of the mortgage and "whether defendants failed to meet statutory requirements for conducting a foreclosure sale." Doc. 1 ¶ 37. Plaintiffs argue that Defendants lacked standing to foreclose on the Quincy Street House, that Plaintiffs do not know to whom they should be paying arrearages on the mortgage and that Defendants cannot produce the original executed note for the foreclosed mortgage. All of these issues could have been raised as defenses during the

5

foreclosure action but Plaintiffs did not do so. Plaintiffs are now asking the Court to review them again in hopes that the Court will overturn the decision of the state court foreclosing on the property, which is impermissible under *Rooker-Feldman*. Therefore, there is no question that Count I falls squarely within *Rooker-Feldman* and is barred. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011) (affirming dismissal of declaratory judgment claim seeking to reverse a mortgage foreclosure as barred by *Rooker-Feldman*).

### 2. Count II: Injunctive Relief

Count II seeks an injunction to stop the foreclosure and sale of the Quincy Street House. Again, this would require the Court to overturn the decisions of the state courts that have already entered judgment approving the foreclosure and judicial sale of the property. Therefore, this Count also is barred by *Rooker-Feldman*. *See id.* (affirming dismissal of claims seeking to overturn state court foreclosure decisions as barred by *Rooker-Feldman*).

### 3. Count IV: Action for Rescission

Count VI seeks to rescind the mortgage Laura took out on the Quincy Street House, and presumably overturn the foreclosure and sale of the property. Plaintiffs allege that the mortgage is subject to rescission because of fraud, breach of fiduciary duty, and unfair and unlawful business practices on the part of Defendants. Plaintiffs could have raised these arguments during the state court foreclosure proceedings, but did not. Additionally, in seeking rescission, Plaintiffs are attempting to get this Court to throw out the final foreclosure ruling of the state court, and therefore this Count is barred by *Rooker-Feldman*. *See Canen v. U.S. Bank Nat. Ass'n*, 913 F. Supp. 2d 657, 662 (N.D. Ind. 2012) (dismissing claims seeking rescission of mortgage under *Rooker-Feldman*).

#### 4. Count V: Wrongful Foreclosure

Count V seeks to overturn the foreclosure of the Quincy Street House, arguing that Defendants failed to comply with a variety of federal statutes and regulations related to housing. All of Plaintiffs' arguments could have been raised during the state foreclosure process, and the remedy Plaintiffs seek is that this Court directly overturn the foreclosure ruling of the state court. Therefore, this Count is barred by *Rooker-Feldman*. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir.), *cert. denied*, 138 S. Ct. 227, 199 L. Ed. 2d 121 (2017) (affirming dismissal of wrongful foreclosure claim under *Rooker-Feldman*).

#### 5. Count VI: Unfair and Unlawful Business Practices

Count VI alleges that Citi, HR&O, Cook County Recorder of Deeds Karen Yarbrough, and Jason Shapiro engaged in unfair and unlawful business practices in violation of ICFA, and seeks to reverse the foreclosure of the Quincy Street House as a remedy. Because any argument that Defendants engaged in unlawful activity in relation to the mortgage on the Quincy Street House and its ultimate foreclosure could have been presented during the foreclosure proceedings, and because Plaintiffs seek as a remedy to have the Court overturn the foreclosure of the property, this Count is barred by *Rooker-Feldman*. *See Calhoun v. CitiMortgage, Inc.*, No. 13 C 8042, 2014 WL 274122, at *5 (N.D. Ill. Jan. 24, 2014), *aff'd*, 580 F. App'x 484 (7th Cir. 2014) (dismissing ICFA claim challenging foreclosure as barred by *Rooker-Feldman*).

#### 6. Count VII: Quiet Title

In Count VII, Plaintiffs seek to quiet title on the Quincy Street House against Citi and HR&O, claiming they have no right or interest in the property. Plaintiffs could have raised this as a defense in the foreclosure action but did not. *Watkins v. CIT Grp./Consumer Fin., Inc.*, No. 14 CV 02164, 2015 WL 831991, at *4 (N.D. Ill. Feb. 25, 2015). Additionally, this Count

ultimately seeks to overturn the foreclosure and sale of the property. Therefore, this Count is also barred by *Rooker-Feldman*.

For the foregoing reasons, the Court dismisses Counts I, II, and IV–VII against all Motion Defendants for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Furthermore, because the *Rooker-Feldman* doctrine is equally effective at barring the same claims against all other Defendants, the Court dismisses the claims against Cook County Record of Deeds Karen Yarbrough, Cook County Assessor Joseph A. Berrios, Joseph Preston Harris, Sr., and Does 1–10 as well. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (where one defendant files a motion that is equally effective in barring the claim against the other defendants, the Court may *sua sponte* enter judgment in favor of the additional non-moving defendants).

**B.     Failure to State a Claim**

The Motion Defendants also move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Because the Court has already dismissed Counts I, II, and IV–VII under *Rooker-Feldman*, the analysis below is limited to Counts III and VIII, the demand for accounting and Thirteenth Amendment claims respectively.

### 1. Count III: Demand for Accounting Under RESPA

Plaintiffs argue in Count III that Defendants have not responded to Plaintiffs' requests regarding the amount of money owed to Defendants, in violation of the Real Estate Settlement Procedures Act ("RESPA"). The Motion Defendants move to dismiss this Count for failure to state a claim. "RESPA is a consumer protection statute that regulates closing costs and the real estate settlement process." *Watkins*, 2015 WL 831991, at *6. Plaintiffs do not state specifically to which Defendants they have made requests for information or when they made the requests. Furthermore, Plaintiffs do not state what provision of RESPA Defendants have violated or cite to any authority establishing that Defendants are required to comply with RESPA after a completed foreclosure and judicial sale. In fact, Plaintiffs do not address this issue at all in their Response to any of the Motion Defendants' motions to dismiss. Therefore, the Court dismisses this claim because Plaintiffs have failed to allege any facts in support of the claim and because Plaintiffs have abandoned the claim in their response to the motions to dismiss. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument in a motion to dismiss results in waiver). Plaintiffs may amend this claim; however, they are cautioned that any amendment that seeks to overturn the foreclosure on a basis that could have been presented to the state court during the foreclosure proceedings will be dismissed pursuant to *Rooker-Feldman*. Thus, Plaintiffs can only amend this Count to seek relief unrelated to the foreclosure and judicial sale of the Quincy Street House.

9

### 2. Count VIII: Thirteenth Amendment Claim

Plaintiffs assert a claim under the Thirteenth Amendment to the United States Constitution alleging that "Defendants systematically engage in civil and criminal conspiracies to target African American homeowners" in an effort to strip them "of their equitable and ownership interests." Doc. 1 ¶ 92. The Motion Defendants move to dismiss this claim arguing that it is conclusory and does not allege any facts against them. In their response to the motions to dismiss, Plaintiffs only state that the pleading standard under Federal Rule of Civil Procedure 8 is low, but provide no additional explanation of how their barebones, conclusory allegations in Count VIII meet that low standard.

Count VIII does not name any of the Motion Defendants or identify any actions they have taken to further the alleged conspiracy. The entirety of the allegations in Count VIII is conclusory statements about the existence of a conspiracy and citations to cases and general legal principals regarding the Thirteenth Amendment. These allegations do not meet even the low pleading standards of Rule 8 because it fails to put the Motion Defendants on notice of the claims against them. Even making all plausible inferences in favor of Plaintiffs, there is not sufficient factual content for the Court to infer that the Motion Defendants have engaged in a conspiracy of any kind. *Iqbal*, 556 U.S. at 678. Therefore, the Court grants the motion to dismiss Count VIII. Plaintiffs may amend this claim; however, they are cautioned that any amendment that seeks to overturn the foreclosure on a basis that could have been presented to the state court during the foreclosure proceedings will be dismissed pursuant to *Rooker-Feldman*. Thus, Plaintiffs can only amend this Count to seek relief unrelated to the foreclosure and judicial sale of the Quincy Street House.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motions to dismiss [22, 28, 55]. The Court dismisses Counts I, II, and IV-VII for lack of subject-matter jurisdiction to decide them under the *Rooker-Feldman* Doctrine against all Defendants. The Court dismisses Counts III and VIII against the Motion Defendants without prejudice. Plaintiffs may amend their complaint with respect to those Counts, except that any attempt to seek a review of the prior state court rulings to overturn the foreclosure and eviction will be subject to summary dismissal under *Rooker-Feldman*. If Plaintiffs wish to amend the complaint, they must do so by February 28, 2018. If Plaintiffs do not amend by February 28, 2018, the dismissal will convert to one with prejudice. Because Plaintiffs have previously missed numerous deadlines and hearings in this case, they will not be provided any additional warnings for failure to comply with deadlines set by the Court.

Dated: January 23, 2018

SARA L. ELLIS
United States District Judge